UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BOASSO AMERICA
CORPORATION,
d/b/a DEPOT CONNECT
INTERNATIONAL,

           Plaintiff,                              Case No.: **8:26-cv-00388-WFJ-LSG**

      v.

**GEORGE SHOWALTER**,

           Defendant.

## ORDER ON MOTION FOR A PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiff Boasso America Corporation d/b/a Depot Connect International's ("DCI") Motion for a Preliminary Injunction. Dkt. 2. Defendant George Showalter responded in opposition. Dkt. 15. The Court held a preliminary injunction evidentiary hearing on March 24, 2026. Dkt. 29; Dkts. 30, 31 (showing admitted exhibits). The Court, having reviewed the motion, the Verified Complaint (Dkt. 1) and attached evidence, heard testimony, and reviewed all admitted exhibits, finds that the motion for preliminary injunction is due to be granted.

This action for injunctive relief in aid of arbitration was commenced on February 10, 2026. DCI's Verified Complaint alleged that Showalter directly or indirectly violated certain post-employment restrictive covenants in his Employment Agreement dated October 26, 2020, with DCI (Dkt. 1-2 at 10–12), namely, *inter alia*,

his agreement that he would not solicit DCI's employees to leave DCI for one of its competitors (the "Non-Solicitation Provision").

The decision to grant or deny a preliminary injunction rests in the sound discretion of the district court. *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1354 (11th Cir. 1982). DCI has demonstrated all the elements required for a preliminary injunction to issue: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if an injunction does not issue; (3) the balance of the harms favors DCI; and (4) a preliminary injunction is in the public interest. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (citation omitted); *see* Fed. R. Civ. P. 65(a); Local Rule 6.02, M.D. Fla.

DCI has presented evidence showing a likelihood of success on the issue that Defendant Showalter breached the Non-Solicitation Provision. The text messages between Showalter and DCI employee Hector Martinez appear to show that Showalter (i) interviewed Mr. Martinez for a job at Showalter's new employer, Heniff Transportation Systems ("Heniff"), which is a competitor to DCI; (ii) negotiated an hourly wage for Mr. Martinez in excess of what Mr. Martinez requested; (iii) arranged a convenient time and place for Mr. Martinez's pre-employment physical tests; and (iv) assisted in hiring Mr. Martinez for a job at Heniff. Dkt. 15-1 at 9–13 (showing text messages between Showalter and Mr. Martinez); Dkt. 30-2 (same). At a minimum, this is indirect encouragement of a DCI employee to work for Heniff, in violation of the Non-Solicitation Provision. *See* Dkt. 1-2 at 12 ("[Defendant Showalter] will not, during the Non-Solicitation Period and within the Territory, solicit, hire, entice,

induce, or encourage, whether directly or indirectly, any person who is an employee or independent contractor . . . of [DCI].").

It appears that Showalter then misstated his involvement in a December 3, 2025, email response, *see* Dkt. 1-4 at 2 ("I have not tried to recruit anyone. . . . Any contact with new hires occurred after they had already been hired."), to DCI's November 26, 2025, letter demanding that he stop his solicitation of DCI's employee, *see* Dkt. 1-3. Thus, the Court finds that Plaintiff has a substantial likelihood of success on the merits of its breach of the Non-Solicitation Provision claim.

Defendant, however, points to Louisiana state law, arguing that the non-solicitation provision is unenforceable since Louisiana law permits written contracts to be modified by oral contracts. Dkt. 15 at 16–17.[1] Under Louisiana law, "written contracts may be modified by oral contracts and the conduct of the parties, even in contracts that specify that any changes to the contract must be in writing." *Wechem, Inc. v. Evans*, 274 So. 3d 877, 888 (La. Ct. App. 2019) (citation omitted). "Whether there is an oral agreement that modified the written contract is a question of fact." *Id.*

---

[1] Louisiana law governs the employment agreement. Dkt. 1-2 at 7 ("This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Louisiana applicable to contracts."). Notably, "Louisiana has disfavored non-competition agreements." *Wechem, Inc. v. Evans*, 274 So. 3d 877, 885 (La. Ct. App. 2019). Such restrictive covenants "are deemed to be against public policy, except under limited circumstances delineated" by La. Stat. § 23:921. *Id.* However, La. Stat. § 23:921(C) provides "an exception to Louisiana public policy against non-competition agreements and, as such, must be strictly construed." *Id.* (citation omitted). To determine whether the employer has carried its burden of proving its right to injunctive relief, the court must consider the validity and enforceability of the agreement sought to be enforced by the employer. *Id.* (citation omitted). Defendant Showalter, however, does not directly challenge the validity of the Non-Solicitation Provision under Louisiana law. *See* Dkt. 15 at 9. As such, the Court will not conduct a full analysis as to whether the restrictive covenant at issue complies with La. Stat. § 23:921(C). *See id.* ("To be valid, non-competition and non-solicitation agreements must comply with [La. Stat. § 23:921].”); *VarTech Sys., Inc. v. Hayden*, 951 So. 2d 247, 260 (La. Ct. App. 2006) (discussing the requirements that a non-solicitation clause must comply with under La. Stat. § 23:921).

Defendant Showalter did not attend the evidentiary hearing. Instead, he produced an affidavit. *See* Dkt. 15-1. In it, Showalter contends that an oral representation was made to him at the time of signing. *Id.* ¶ 3. Specifically, the "restrictive covenants were tied to and coextensive with the three-year bonus period, which amounted to a mutual understanding between the parties that the agreement's operative effect would extend no longer than three years from execution." Dkt. 15 at 17. However, the evidence and testimony adduced at the evidentiary hearing indicate that the only time limitation on the restrictive covenants was the twelve months after Showalter's employment ended. *See* Dkt. 1-2 at 12 ("During [Showalter's employment] and for a period of twelve (12) months after the [Showalter's employment] ends, . . . [Showalter] will not solicit . . . .").

Beyond Defendant's self-serving affidavit, Dkt. 15-1 ¶ 3, there is nothing in the record to suggest that an oral time limitation was added before or after Showalter signed the restrictive covenant agreement. Defendant's failure to produce "other corroborating circumstances" showing an oral modification is fatal to his argument that the Non-Solicitation Provision was limited to three years. *Lantech Constr. Co., L.L.C. v. Speed*, 15 So. 3d 289, 293 (La. Ct. App. 2009) ("Oral modifications alleged to be in excess of $500 must be proved by at least one 'credible witness' and 'other corroborating circumstances.'"); *see also Suire v. Lafayette City-Par. Consol. Govt.*, 907 So. 2d 37, 58 (La. 2005) (noting "[t]he 'other corroborating circumstances' need only be general in nature; independent proof of every detail of the agreement is not required. . . . But, the other corroboration must come from a source other than the [party claiming

4

the existence of the oral contract]," and finding "the plaintiff has failed, as a matter of law, to establish the existence of an oral contract" since "[t]he only proof that the plaintiff has provided in this case to establish the existence of [an oral contract] consisted of his own uncorroborated deposition testimony."). Therefore, at this stage of the proceeding, the Court finds Defendant was still bound by the Non-Solicitation Provision when he departed DCI for Heniff.

Next, the consequences of Showalter's conduct show a likelihood of irreparable harm sufficient to support a preliminary injunction. Indeed, Showalter agreed that such conduct would lead to "irreparable damage." *See* Dkt. 1-2 at 12 ("Employee acknowledges that irreparable damage would occur in the event of Employee's breach of any of the provisions of this Appendix A."). Showalter's solicitation of one or more DCI employees poses an ongoing risk of irreparable harm to DCI's workforce and customer sentiment. *See Home Point Fin. Corp. v. Lane*, No. 6:20-CV-1819-CEM-EJK, 2022 WL 22866392, at *6 (M.D. Fla. Dec. 14, 2022) (citing *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Ltd. Liab. Co.*, 425 F.3d 964, 970 (11th Cir. 2005)) (finding the presumption of irreparable injury still applies since the "loss of customers and goodwill is unquantifiable"); *JTH Tax, LLC v. Morrell*, No. 8:24-CV-237-SDM-CPT, 2025 WL 3900733, at *8 (M.D. Fla. Aug. 11, 2025) (noting that injunctions are the "normal and favored remedy" for breaches of restrictive covenants).

Finally, the balance of harms favors DCI with this injunction. Requiring Showalter to honor his signed employment agreement poses no harm to him. *See* Dkt. 1-2 at 13; *JTH Tax*, 2025 WL 3900733, at *8 (citation modified) (finding that the

defendants "cannot complain[] that they will suffer harm from an injunction that merely prevents further violations of the agreement"). On the other hand, DCI suffers "irreparable damage" and harm when one or more of its employees are encouraged to leave, despite Showalter's contractual promise not to do so. Dkt. 1-2 at 12. The public interest is also furthered by ensuring that lawfully executed restrictive covenants are enforceable against the parties who signed the agreement. *See 7-Eleven, Inc. v. Kapoor Bros, Inc.*, 977 F. Supp. 2d 1211, 1230 (M.D. Fla. 2013) ("A preliminary injunction enforcing the restrictive covenants will serve the public interest, because enforcement of a valid restrictive covenant encourages parties to adhere to contractual obligations."); *Nat'l Staffing Sols., Inc. v. Sanchez*, 626 F. Supp. 3d 1247, 1255 (M.D. Fla. 2022) ("Defendant willingly agreed to the conditions, and the public benefits from having such agreement enforced.").

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1.    The Plaintiff DCI's Motion for a Preliminary Injunction, Dkt. 2, is **GRANTED**.

2.    Defendant Showalter is **ENJOINED** until **August 1, 2026**, from violating the Non-Solicitation Provision of the Employment Agreement, which prohibits him from soliciting DCI's employees for employment at a direct competitor for a period of 12 months following the termination of his employment at DCI;

3.      Showalter therefore shall not solicit, hire, entice, induce, or encourage, either directly or indirectly, DCI's employees or independent contractors to leave the employ or service of DCI for the purposes of being employed or associated with a company that has a similar business to DCI within DCI's Territory, as set forth and defined in the Non-Solicitation Provision of the Employment Agreement;

4.      Because the issuance of this injunction will not harm Showalter or impair his ability to earn a living, the Court **WAIVES** the requirement that DCI post a bond under Fed.R.Civ.P. 65(c);[2]

5.      This Preliminary Injunction shall take effect immediately; and

6.      This action is **STAYED** pending completion of the Arbitration before the American Arbitration Association in accordance with the dispute resolution provisions of the Employment Agreement. The Court shall retain jurisdiction solely to amend or modify this Preliminary Injunction, to enforce this Preliminary Injunction, to remedy any violation of this Preliminary Injunction, and to adjudicate any motion by DCI for fees incurred in connection with obtaining this Preliminary Injunction in accordance with the provisions of the Employment Agreement. Plaintiff DCI may seek relief for any violation of the Employment Agreement by submitting a Motion for Sanctions or for Contempt, accompanied by an affidavit executed by an officer of DCI or by its in-house counsel, detailing the violation(s) of this Preliminary Injunction.

---

[2] "The amount of an injunction bond is [a matter ultimately] within the sound discretion of the district court." *See Carillon Importers, Ltd. v. Frank Pesce Int'l Group, Ltd.,* 112 F.3d 1125, 1127 (11th Cir. 1997).

**DONE AND ORDERED** at Tampa, Florida, on April 3, 2026.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of record

8